IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:14-MJ-2098-F-1

UNITED STATES OF AMERICA          )
                                  )
        v.                        )
                                  )         O R D E R
JUSTIN PRESSLEY,                  )
                                  )
        Defendant.                )

This matter is before the court pursuant to Fed. R. Crim. P. 5.1 to determine whether

there is probable cause to support the charges contained in a criminal complaint that Defendant

Justin Pressley ("Defendant") communicated threats through his Facebook social media page in

violation of 18 U.S.C. § 875(c). A preliminary hearing was held on August 1, 2014, at which

Defendant appeared and was represented by counsel. For the reasons set forth below, this court

finds probable cause has been established and accordingly, Defendant is required to appear for

further proceedings.

**BACKGROUND**

One July 24, 2014, the government filed a criminal complaint against Defendant charging

him with violating 18 U.S.C. § 875(c), prohibiting the transmission in interstate or foreign

commerce any communication containing any threat to kidnap any person or any threat to injure

the person of another. [DE-1]. The criminal complaint was supported by a sworn affidavit of

Alexandr Crumley, Special Agent of the Bureau of Alcohol Tobacco Firearms and Explosives

("Agent Crumley"), detailing the alleged violations. A warrant was issued and Defendant was

subsequently arrested. On August 1, 2014, Defendant appeared before the undersigned for his

preliminary hearing during which he was represented by counsel. The government produced

Agent Crumley whose testimony corroborated in all material respects his previously sworn affidavit. Defendant through counsel cross examined Agent Crumley and produced Defendant's mother, Melissa Pressley, as a witness. The testimony at the hearing and other evidence before the court establishes the following for purposes of probable cause.

On July 22, 2014, John Smith and David Williams testified on behalf of the government in the criminal drug conspiracy trial of *United States of America v. James Rodrequias Pressley and Linda Dawson*, No. 5:12-CR-284-F ("drug conspiracy trial").[1] The drug conspiracy trial commenced on July 22, 2014, and lasted eight days, ultimately ending with a jury returning a verdict of guilty as to all counts against defendant James Rodrequias Pressley. John Smith and David Williams are cousins of James Rodrequias Pressley, and Defendant is a nephew of James Rodrequias Pressley. According to law enforcement, on July 23, 2014, during the course of the drug conspiracy trial, John Smith, appearing afraid, notified law enforcement about a threat Defendant made via his Facebook page upon the lives of family members who testified against James Rodrequias Pressley. That same day, law enforcement reviewed Defendant's personal Facebook page and found that on July 22, 2014, the following statement had been posted:

> For u fake ass family members taking dat stand against my unk cause u can't
> handle ya own mafukkin time I hope a choppa bullet penetrate ya fukkin chest soon
> as u step foot out dat court room. Feds don't give a fukk about u they won't protect
> u from the wrath of god.

Compl. at 2, 4. Melissa Pressley, Defendant's mother confirmed that the Facebook page on which the statements were posted belongs to Defendant. She stated she thinks that Defendant was upset and the comments posted were simply a reflection of how Defendant felt about his

---

[1]Referred to extensively by counsel without objection in the preliminary hearing, the court has taken notice of the drug conspiracy trial proceedings.

2

uncle's trial proceedings. Based upon his training and experience, Agent Crumley stated that a "choppa bullet" is a street term used to describe a heavy ammunition round that can penetrate a bullet proof vest. Agent Crumley also testified that forty-one individuals, a significant number of which were Defendant's family members, indicated on Defendant's Facebook page that they "liked" Defendant's posted comments.

After reviewing Defendant's posted statements, law enforcement went to Defendant's home at 1203 North Railroad Street in Dunn, North Carolina, where law enforcement spoke with Defendant's grandmother, Alfreda McKoy. Ms. McKoy informed law enforcement they would need to contact Defendant's attorney if they wished to speak with him. While at Defendant's residence, law enforcement personnel dialed a telephone number, believed to be Defendant's, provided to them by Defendant's girlfriend and, once the number was dialed, they could hear a telephone ringing inside the residence. While law enforcement personnel were outside Defendant's residence speaking with Ms. McKoy, another post was made to Defendant's Facebook page which read: "Know the difference between a threat and wishful thinking! Fuck them snitches. Ps. This is my fb and I have the freedom to say wtf I want." Compl. at 3, 5. Another post was made contemporaneous to law enforcement's visit to the residence which read:

> Fuck 12 strait like dat. I'm on my pac shit. Fukk dpd fuck Harnett county task force fukk the atf fukk the sbi fuk the d.a. a.d.a. and if u got a problem with jsnoop fukk u too, snitches fukk u too, haters fukk u too. Damn right I feel sum kinda way. If we ain't loosing family to gun violence n black on black crime we loosing them to the system. fukk the world better pray I stay sane while yall sitting here wanna talk lmao can I get a fuck 12.

*Id.* at 3, 5. Based on his training and experience, Agent Crumley testified that,"Fuck 12" means "fuck the police," while "I'm on my pac shit" refers to the gangster lifestyle that deceased rapper

3

Tupac Shakur lived.  Agent Crumley also testified that according to the Dunn Police Department Defendant is a validated Bloods gang member.

## DISCUSSION

The purpose of a probable cause hearing is for a federal judicial officer to make a neutral determination that further criminal proceedings are justified. *Jaben v. United States*, 381 U.S. 214, 224 (1965).  As recognized by the Supreme Court, "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts...." *Illinois v. Gates,* 462 U.S. 213, 232 (1983).  The standard of probable cause requires "only the probability, and not a prima facie showing, of criminal activity" under the totality of the circumstances. *Id.* at 235 (internal quotations omitted).  Accordingly, the magistrate judge's task is "'simply to make a practical, common-sense decision whether, given all the circumstances set forth..., including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability' that the defendant has committed a crime." *United States v. Mims*, 812 F.2d 1068, 1072 (8th Cir. 1987) (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983)).

Defendant has been arrested for allegedly committing an act in violation of 18 U.S.C. § 875(c).  "Section 875(c) in essence makes it a crime to '*transmit any communication* containing [a] threat to injure.'" *United States v. White*, 670 F.3d 498, 508 (4th Cir. 2012) (emphasis in original).  The *actus reus* of the offense is the transmission of a communication, while the *mens rea* is not explicitly specified. *Id.*  This has led the Fourth Circuit to reject the idea that "§ 875(c) requires a showing of specific intent that the recipient feel threatened," and thus § 875(c) is presumed to be a general intent crime. *Id.* (citing *United States v. Darby*, 37 F.3d 1059, 1066

4

(4th Cir. 1994)). General intent crimes do "not require that the defendant intend the precise purpose or results of the crime but only that the defendant intentionally engage in the *actus reus* of the crime, in this case the transmission of a communication." *Id.* (citing *Carter v. United States*, 530 U.S. 255, 268 (2000)). Accordingly, "the government need not prove that a defendant transmitted the communication with the *specific intent that the defendant feel threatened* but only with the *general intent* to transmit the communication." *Id.* (emphasis in original). Therefore "the interpretation of a reasonable recipient familiar with the context of the communication" is the objective test for determining whether the element of a true threat is established. *Id.* (quoting *Darby*, 37 F.3d at 1066).

A statement constitutes a "true threat" if "'an ordinary, reasonable recipient who is familiar with the context . . . would interpret [the statement] as a threat of injury.'" *Id.* at 507-08 (quoting *United States v. Armel*, 585 F.3d 182, 185 (4th Cir. 2009)). "Thus, while the speaker need only *intend to communicate* a statement, whether the statement amounts to a true threat is determined by the understanding of a *reasonable recipient familiar with the context* . . . ." *Id.* at 509 (emphasis in original). "A true threat to injure a person, . . . standing alone, is not protected speech and can be the subject of a constitutionally acceptable criminal statute that requires only a general intent *mens rea*." *Id.* at 511. "In *Watts v. United States*, 394 U.S. 705 [] (1969), the Supreme Court identified four factors in determining that [a defendant's] statement was not a true threat." *United States v. Napa*, 370 F. App'x 402, 404, 2010 WL 1006918 (4th Cir. Mar. 19, 2010). "The Court noted that the communication was: (1) made in jest; (2) to a public audience; (3) in political opposition to the President; and (4) conditioned upon an event the speaker himself vowed would never happen." *Id.* (citing *Watts*, 394 U.S. at 707-08). Here, it is clear that

5

Defendant's statement was not made in jest, in political opposition, or conditional in nature on an event unlikely to occur. Thus, the determination of whether the statement was made to a public audience is the deciding factor.

The case of *O'Leary v. Florida*, 109 So.3d 874 (Fla. Dist. Ct. App. 2013) is similar to the instant case and, although not binding, remains instructive on the issue of publication of the alleged threat to a public audience. In *O'Leary*, a case of first impression, the District Court of Appeal of Florida found that threats posted by a defendant on his personal Facebook page, the subject of which was a relative of the recipient and a Facebook "friend" of the defendant's, was sent or transmitted to the recipient. *Id.* at 877-78. By the affirmative act of posting the threats on Facebook, even though it was on his own personal Facebook page, the defendant was found to have "sent" or transmitted the threatening statements to all his Facebook "friends," including the recipient. *Id.* at 877. The court in *O'Leary* found that "given the mission of Facebook, there is no logical reason to post comments other than to communicate them to other Facebook users." *Id.* Here, the statement at issue was explicitly directed to witness family members. Thus, the fact that it was transmitted through a public medium such as Facebook for others to see does not diminish its personal character so as to make it innocuous.

The statute considered by the court in *O'Leary*, F.S.A § 836.10, is strikingly similar to 18 U.S.C. 875(c) and the logic behind each follows accordingly. The statute at issue in *O'Leary* stated, "Any person who writes . . . and also sends . . . any electronic communication . . . to any person, containing a threat to kill or to do bodily injury to the person to whom such . . . communication is sent, . . . commits a felony . . . ." Fla. Stat. Ann. § 836.10 (West). Similarly, 18 U.S.C. § 875(c) states, "Whoever transmits . . . any communication containing any threat to . .

6

. injure the person of another, shall be fined under this title or imprisoned not more than five years, or both." 18 U.S.C. § 875(c).

Given the totality of the circumstances and considering the veracity of witnesses and the practical commonsense nature of its determination, the court finds probable cause to believe Defendant made the postings to his Facebook page that are the subject of the criminal complaint in this matter. Furthermore, it has been shown with sufficient probable cause that Defendant committed the act of "transmission of a communication containing a threat to injure" when he stated "I hope a choppa bullet penetrate ya . . . chest." Since § 875(c) is presumed to be a general intent crime, it is of little consequence that Defendant used the words "I hope" because "the government need not prove that a defendant transmitted the communication with . . . specific intent . . . but only with the general intent to transmit the communication." *White*, 670 F.3d at 508. Since the objective test for determining whether the element of a true threat was established is "the interpretation of a reasonable recipient familiar with the context of the communication," *id.*, it follows that by contacting law enforcement, John Smith, a family member who had just recently testified against Defendant's uncle, had interpreted Defendant's statement to be a true threat. Although Defendant subsequently posted, "[k]now the difference between a threat and wishful thinking," Compl. at 3, he is incorrect to say "I have the freedom to say [what] I want," *id.*, because "[a] true threat to injure a person, . . . standing alone, is not protected speech and can be the subject of a constitutionally acceptable criminal statute that requires only a general intent *mens rea*," *White*, 670 F.3d at 511. Accordingly, the court finds probable cause to support the charge of communicating threats.

7

## CONCLUSION

For the reasons stated above the court finds probable cause to believe that an offense under 18 U.S.C. § 875(c) has been committed and Defendant committed it and, accordingly, Defendant shall appear for further proceedings. Fed. R. Crim. P. 5.1(e). The court will enter a separate order addressing issues of Defendant's liberty status in accordance with 18 U.S.C. § 3142.

So ordered, the 4th day of August, 2014.

Robert B. Jones, Jr.
United States Magistrate Judge